UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| MELODY VIEIRA | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No: 1:16-CV-00469 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner, Social Security | ) | |
| Administration | ) | |
| | ) | |
| Defendant, | ) | |

ORDER

Melody Vieira filed a claim for Social Security Disability Insurance and Supplemental Security Income. Her claim was denied initially, and upon reconsideration. Thereafter, Ms. Vieira appeared before an Administrative Law Judge ("ALJ") for a hearing who denied her claim. ECF No. 12 at 23-32. Ms. Vieira is now seeking judicial review of the final administrative decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) (2015).

Ms. Vieira was 45 years old at the time of her onset of disability. She completed the eleventh grade. She previously worked as a cashier at a casino and a marker at a novelty factory. Her disabilities include: (1) cervical degenerative disc disease; (2) right shoulder degenerative joint disease; (3) obesity; (4) major depressive disorder; and (5) post-traumatic stress disorder. ECF No. 12 at 3.

Ms. Vieira resides in a townhouse with her twin children, ages 19. ECF No. 12-2 at 142. On a typical day, she wakes up at 5:00 a.m., makes coffee, and sits on the

couch for the majority of the day. *Id.* at 151. She does not read or use the computer and drives approximately once per week. *Id.* at 154. Her children perform the household chores including cooking, cleaning, and doing the laundry. *Id.* at 152. Often Ms. Vieira stays in her pajamas all day and her children have to encourage her to shower. *Id.* at 158.

Ms. Vieira suffers from chronic pain in the right side of her neck/back that radiates into the right shoulder and down the right arm because of a work-related injury. ECF No. 12-1 at 40. Subsequently, Ms. Vieira received treatment from Dr. David J. DiSanto, who evaluated her injury and determined that the injury caused her to remain out of work with a partial or temporary total disability. Occupational physicians at Corporate Care also treated Ms. Vieira and determined that she was capable of returning to "modified duty" work.

In addition, Ms. Vieira has received treatment from a psychiatrist, Dr. Maria Gonzalez, and a therapist, Ms. Cecile Tetreault, for her depression and anxiety issues. Additionally, prior to the ALJ's decision, state agency consultants assessed Ms. Vieira.

### ALJ Decision

The ALJ found that Ms. Vieira was not disabled under sections 216(i) and 223(d) of the Social Security Act. The ALJ applied the standard five-step sequential evaluation process for determining whether an individual is disabled. The ALJ found that although Ms. Vieira's impairments are severe, she does not have an impairment or combination of impairments that meet or medically equals the severity of one of

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Further, the ALJ found that Ms. Vieira has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and is capable of performing her past relevant work. Thus, the ALJ concluded that Ms. Vieira was not under a disability as defined in the Social Security Act, from the date she filed her application through the date of the ALJ's decision.

## Standard of Review

"Judicial review of Social Security administrative determinations is authorized by 42 U.S.C. § 405(g) (1994)." *Seavey v. Barnhart*, 276 F.3d 1, 8 (1st Cir. 2001). A district court's role in reviewing the Commissioner's decision is limited. Although questions of law are reviewed *de novo*, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). The term "substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The determination of substantiality must be made upon an evaluation of the record as a whole. *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). In reviewing the record, the Court must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the Secretary. The resolution of conflicts in the evidence is for the Commissioner, not the courts. *Rodriguez v. Sec'y of Health & Human Servs.*,

647 F.2d 218, 222 (1st Cir. 1981) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Analysis

Ms. Vieira raises three issues on appeal: (1) the ALJ improperly considered evidence of Ms. Vieira's Global Assessment Functioning (GAF) scores; (2) the ALJ erred in evaluating the record medical opinion evidence; and (3) the ALJ failed to follow the proper standards for evaluating credibility. ECF No. 10 at 3. The Court will address each issue in turn.

*GAF Scores*

The record contains GAF scores assigned to Ms. Vieira between thirty-five and fifty-five. The ALJ gave less weight to the doctors who calculated the scores between thirty-five and fifty because those assessments represented only temporary short-term exacerbations in symptoms, which improved in short periods. In her appeal, Ms. Vieira argues that the ALJ improperly considered the GAF scores to discredit certain medical evidence.

It is important to first clarify appropriate reliance on GAF scores, as laid out by the Social Security Administration in an Administrative Memorandum (identification number AM-13066 REV, effective date October 14, 2014) ("AM"). The AM "provides guidance to all State and Federal adjudicators (including administrative law judges) on how to consider ... GAF ratings...when assessing disability claims involving mental disorders." GAF scores are opinion evidence that must be considered with all the evidence about a person's functioning. Importantly,

supporting evidence is required in order for GAF scores to be given weight. Thus, unless the GAF score is well supported and consistent with other evidence in the file, it is entitled to little weight. Furthermore, the AM emphasizes that GAF scores are not standardized, which "limits direct comparability of GAF ratings assigned by different evaluators or even by the same evaluator at substantially different points in time." Ultimately, the extent to which an adjudicator can rely on the GAF score as a measure of impairment severity and mental functioning depends on: (1) whether the GAF rating is consistent with other evidence; (2) how familiar the rater is with the claimant; and (3) the rater's expertise.

Ms. Viera claims that the ALJ gave an "inordinate amount of weight to the GAF scores." ECF No. 10 at 11. However, such is not the case. The ALJ simply made note of competing GAF scores (from 32 to 55), then went on appropriately to evaluate the treatment record and relied on the "largely negative mental status examinations." *Id.* at 30-31. The ALJ noted the GAF scores but relied on the more specific longitudinal picture. He discredited certain medical evidence based on its assigned GAF score because it was inconsistent with medical evidence contained in the record.

This case is not the same as *Hall v. Colvin* where this Court held that the ALJ's "reliance on GAF scores to discredit or find credible certain medical evidence was error." *Hall v. Colvin,* 18 F. Supp. 3d 144, 153 (D.R.I. 2014). Here the ALJ did not rely on the GAF scores, but rather, merely acknowledged them as part of the medical records and then appropriately analyzed the underlying record.

There was nothing inappropriate about the way the ALJ dealt with the GAF scores that were contained in Ms. Vieira's records.

*Medical Opinion Evidence*

Ms. Vieira next argues that the ALJ improperly weighed the opinion evidence used in establishing her RFC and that instead, the ALJ relied exclusively on the opinion offered by the non-examining, state agency physician. "The law... does not require ALJs to give greater weight to the opinions of treating physicians" even when there is support for those opinions in the medical records. *Arroyo v. Sec'y of Health and Human Servs.*, 932 F.2d 82, 89 (1st Cir. 1991). The ALJ is entitled "to downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where...it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and non-examining physicians." *Arruda v. Barnhart*, 314 F. Supp. 2d 52, 72 (D. Mass. 2004).

In this case, the ALJ afforded "substantial weight" to the opinion of Dr. Clifford Gordon, Ed.D., the state agency reviewing psychologist, in assessing Ms. Vieira's mental RFC. ECF No. 12 at 30. An ALJ may properly rely on the opinion of a state agency non-examining psychologist such as Dr. Gordon where, as here, it is not conclusory and explains the basis for the medical conclusions reached. *Berrios Lopez v. Sec'y of Health and Human Servs.*, 951 F.2d 427, 431 (1st Cir. 1991). While Ms. Vieira further asserts that Dr. Gordon failed to explain adequately the weight he afforded to the record evidence, she fails to identify any evidence the state agency

psychologist improperly neglected to consider, that could reasonably have been expected to lead him to a different conclusion. ECF No. 10 at 14-15. Rather, Dr. Gordon identified the specific medical evidence that he deemed relevant to his evaluation of Ms. Vieira's mental RFC. ECF No. 12 at 49, 64.

The ALJ granted "far less weight" to the opinions of Dr. Maria Gonzalez, M.D. and Ms. Cecile Tetreault because they were "inconsistent with the largely negative mental status examinations noted in the medical record." *Id.* at 30-31. A review of the record reveals that substantial evidence supports the ALJ's consideration of the medical opinion evidence. The only medically acceptable clinical diagnostic evidence supporting Dr. Gonzalez' opinion is the initial psychiatric evaluation she performed on April 8, 2014. ECF No. 12-1 at 73-76. On that date, as the ALJ observed (ECF No. 12 at 30-31), Ms. Vieira's mental status examination was "largely negative" in that she was cooperative with goal-directed thought, average intelligence, and no specific noted issues with memory, concentration, orientation, or insight. ECF No. 12-1 at 75. No further or more probative psychological testing was administered that substantiate the marked, severe, and moderately severe limitations Dr. Gonzalez suggested. *Id.* at 115-16, 118-19.

In summary, the ALJ afforded considerably less weight to the mental functional assessments from both the treating psychiatrist and therapist because their assessments were inconsistent with the mental status examinations noted in Ms. Vieira's medical records. On the other hand, the ALJ gave substantial weight to the assessments made by state agency consultant who found that the claimant was

capable of performing externally light work with some postural/right arm restrictions, and only moderate limitations in selective areas of attention, concentration, persistence, pace, social functioning, and adaptation. The ALJ reasoned that the state agency consultant's assessment was consistent with the findings of her examining physicians, who noted that Ms. Vieira was capable of returning to "modified duty" work, while avoiding overhead or repetitive activities with the right arm/shoulder, or up to "full duty full-time work" as a casino count-room attendant.

The ALJ's evaluation of the medical opinion evidence was appropriate.

*Credibility*

Lastly, Ms. Vieira argues that the ALJ failed to follow the proper standards for evaluating the credibility of Ms. Vieira's subjective complaints as required by Social Security Ruling 96-7p and *Avery v. Sec'y of Health and Human Servs.*, 797 F.2d 19 (1st Cir. 1986). *Avery* requires an ALJ to investigate "all avenues presented that relate to subjective complaints...." *797 F.2d* at 28. Further, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Pursuant to *Avery*, the ALJ, when assessing the credibility of an individual's statements, must consider the following factors:

8

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3. Type, dosage, effectiveness, and adverse side effects of any pain medication;

4. Treatment, other than mediation, for relief of pain;

5. Functional restrictions; and

6. The Claimant's daily activities.

797 F.2d at 29.

The credibility determination by the ALJ is entitled to deference because the ALJ had the ability to observe the claimant, evaluate her demeanor, and consider how her testimony fits in with the rest of the evidence. *Frustaglia v. Sec'y of Health and Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987); *See Yongo v. I.N.S.*, 355 F.3d 27, 32 (1st Cir. 2004) (stating the ALJ, who has the ability to hear the witnesses, gets a lot of deference on credibility judgments.); *See also Suarez v. Sec'y of Health & Human Servs.*, 740 F.2d 1, 1 (1st Cir. 1984) (stating that ALJ is empowered to make credibility determinations ...").

Regarding Ms. Vieira's credibility, the ALJ found that:

In terms of her alleged severe symptoms and disabling limitations, the fact that the claimant returned to full-time work as a marker prior to her alleged onset date of disability, but, after her original work-related neck/shoulder injury is clearly inconsistent with these disabling allegations. In fact, the claimant actually stopped working on the alleged onset date of disability because her employer's business had been sold and moved to the State of "New York". She did note that her Worker's Compensation claim had "settled". Indeed, the undersigned

9

observed during the hearing that the claimant's testimony was inconsistent and clearly not credible particularly as is relates to the amount of time per day she allegedly spent on the "couch" along with the amount of time she drove a vehicle.

ECF No. 12 at 30.

The ALJ considered Ms. Vieira's medications and their reported side effects; the frequency, duration, and intensity of her alleged symptoms; and her activities of daily living, including her statement that she sat "on the couch...24 hours a day" and did not do chores, cook, or drive. *Id.* at 28-29, ECF No. 12-2 at 151-154. The ALJ, therefore, did not fail to comply with the requirements set out by the First Circuit in *Avery* in conducting the credibility analysis. 797 F.2d at 29. The ALJ found that two specific parts of Ms. Vieira's hearing testimony undermined the overall credibility of her subjective reports of her symptoms and functional limitations: 1) her representation that she did not drive, followed closely by her admission that she did in fact drive "maybe once a week, if that" to visit her mother, ECF No. 12-2 at 153-154, 156; and 2) her testimony that she sat or lay down on the couch twenty-four hours a day, getting up only to open or close a window and go to the bathroom. ECF No. 12 at 30, ECF No. 12-2 at 151. The ALJ also considered the fact that Ms. Vieira stopped working, not due to any of the impairments that she alleged were disabling, but because her employer's business had moved out of state. ECF No. 12 at 30, ECF No. 12-2 at 143.

As this Court has previously stated:

In critiquing the ALJ's credibility determination, this Court is mindful of the need to tread softly, because it is the responsibility of the Commissioner to determine issues of credibility and to draw

> inferences from the record.... The ALJ's credibility determination, which is based upon [his] observation of the plaintiff, evaluation of demeanor, and consideration of how [his] testimony fits in with the rest of the evidence, is entitled to deference.

*Cruz v. Astrue*, Civ. No. 11-638, 2013 WL 795063, at *16 (D.R.I. Feb. 12, 2013).

It is worth noting that the ALJ did not find Ms. Vieira's subjective testimony to be entirely unworthy of credence. In fact, he found her complaints to be at least partially credible, to the point that a very restrictive mental RFC was warranted. ECF No. 12 at 27-28. Social Security Regulation 96-7p specifically states that an ALJ "may also find an individual's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree." 1996 WL 374186 at *4 (July 2, 1996). That is precisely what the ALJ did here. Ms. Vieira has not identified any specific evidence that the ALJ failed to consider that should have compelled him to find her testimony to be completely credible. Rather, Ms. Vieira's challenge to the ALJ's evaluation of the credibility of her subjective symptomatic complaints merely asks this Court to reweigh the record evidence in a manner more favorable to her. Such re-evaluation of the medical evidence exceeds the scope of judicial review in Social Security disability cases. See, e.g., *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (in reviewing an ALJ's decision for substantial evidence, the court cannot "reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]"). Contrary to Ms. Vieira's arguments, the ALJ's assessment of the credibility of her subjective complaints of symptoms and resulting functional limitations is supported by substantial evidence.

## Conclusion

The Court affirms the ALJ's decision in this case. Ms. Vieira's Motion to Reverse (ECF No. 10) is DENIED. The Acting Commissioner's Motion to Affirm (ECF No. 13) is GRANTED.

IT IS SO ORDERED

_____
Judge John J. McConnell, Jr.
United States District Judge

August 25, 2017